UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:23-cv-09872-MCS-SK | Date July 23, 2024 |
| Title *Emanate Health v. Optum Health* | |

Present: The Honorable   Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO COMPEL ARBITRATION (ECF NO. 30) (JS-6)

Defendants Optum Health; Optum Health Plan of California; OptumCare Holdings, LLC; OptumCare Management, LLC; and Health Care Partners Affiliates Medical Group move to compel arbitration or, in the alternative, to dismiss this case. (Mot., ECF No. 30-1.) Plaintiffs Emanate Health, Emanate Health IPA, Emanate Health Medical Group, Emanate Health Foothill Presbyterian Hospital, and Emanate Health Medical Center oppose. (Opp'n, ECF No. 34.) Defendants filed a reply. (Reply, ECF No. 37.) The Court deems the motions appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. After the Court took the motion under submission, Defendants filed a notice of supplemental authority, directing the Court to a recently decided Supreme Court case, *Smith v. Spizzirri*, 601 U.S. 472 (2024). (Notice of Suppl. Authority, ECF No. 39.)

## I.   BACKGROUND

As relevant to this motion and alleged in the complaint, the parties are a collection of business associations constituting two healthcare groups. (Compl. ¶¶ 3–15, ECF No. 1.) The parties compete for doctors and patients in the Southern California region. (*See id.* ¶¶ 25–27.) Some, but not all, of the Plaintiffs and Defendants contract with one another. (*Id.* ¶¶ 52–60.) Among these contracts are:

(1) a hospital services agreement between Defendant Optum Health Plan of California and Plaintiff Emanate Health Foothill Presbyterian Hospital; (2) a hospital services agreement between Defendant Optum Health Plan of California and Plaintiff Emanate Health Medical Center; and (3) a physician agreement between Defendant Healthcare Partners Affiliates Medical Group and Plaintiff Emanate Health Medical Group. (*See* Maddigan Decl. Exs. A–C, ECF No. 30-3 to -5; Johnson Decl. Exs. A–C, ECF Nos. 34-2 to -4.) These agreements contain arbitration clauses that apply to "[a]ny controversy, dispute or claim arising out of, in connection with, or related to the interpretation, performance or breach of" the agreements, incorporating JAMS's Comprehensive Arbitration Rules. (Maddigan Decl. Ex. A § 13.2(a); *id.* Ex. B § 13.2(a); *id.* Ex. C § 10.2(a).) Plaintiffs Emanate Health and Emanate Health IPA are not parties to these agreements, and each agreement states that there are no intended third-party beneficiaries. (Johnson Decl. Ex. A, § 14.8; *id.* Ex. B, § 14.8; *id.* Ex. C, § 11.8.)[1]

Plaintiffs brought this action alleging antitrust violations, unfair and unlawful business practices, and intentional interference with prospective economic advantage. Plaintiffs also see declaratory relief connected to non-solicitation clauses in Defendants' contracts. (Compl. ¶¶ 77–112.)

## II. THRESHOLD ISSUE

The parties disagree on whether the California Arbitration Act ("CAA") or the Federal Arbitration Act ("FAA") applies in this case. "[P]arties are free to enter into contracts providing for arbitration under rules established by state law rather than under rules established by the FAA." *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989)). "[P]arties must clearly evidence their intent to be bound by such rules." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002). "In other words, the strong default presumption is that the FAA, not state law, supplies the rules of arbitration," and "a general choice-of-law clause within an

---

[1] The Court refers to Defendants Optum Health Plan of California and Healthcare Partners Affiliate Medical Group together as "signatory Defendants," and to Defendants Optum Health; OptumCare Holdings, LLC; and OptumCare Management, LLC, as "non-signatory Defendants." Similarly, the Court refers to Plaintiffs Emanate Health Medical Group, Emanate Health Foothill Presbyterian Hospital, and Emanate Health Medical Center as "signatory Plaintiffs," and to Plaintiffs Emanate Health and Emanate Health IPA as "non-signatory Plaintiffs."

arbitration provision does not trump the presumption that the FAA supplies the rules of arbitration." *Id.* at 1269–70.

Plaintiffs assert the CAA applies here because the agreements at issue provide that "[t]his Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California . . . ." (Opp'n 8 (internal quotation marks omitted); Johnson Decl. Ex. A § 14.3; *id.* Ex. B § 14.3; *id.* Ex. C § 11.3.) While that statement is not much more than a general choice-of-law clause, courts have held that inclusion of the word "enforce" is sufficient to apply state law. *See Mount Diablo Med. Ctr. v. Health Net of Cal., Inc.*, 101 Cal. App. 4th 711, 716–17 (2002). And while the Ninth Circuit's decision in *Wolsey* would counsel against this conclusion because it held that section 1281.2(c) of the CAA did not apply without an express reference to the section, the Court declines to follow *Wolsey* because "both the California Supreme Court and the California Court of Appeal have disapproved of the Ninth Circuit's construction of Section 1281.2(c)" after *Wolsey* was decided. *Key Brand Ent. Inc. v. Dancap Prods., Inc.*, No. CV 08-2416 AHM (Ex), 2008 WL 11411725, at *5 (C.D. Cal. Sept. 9, 2008) (citing *Cronus Invs. Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 393 n.8 (2005), and *Mount Diablo*, 101 Cal. App. 4th at 725–26). The Court must follow the guidance of these California courts. *See Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008) (stating Ninth Circuit's previous interpretation of California law is "only binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit's] interpretation was incorrect").

All that said, the Court would have arrived at the same conclusion on this motion whether the CAA or FAA applied.

### III.   LEGAL STANDARD

When parties have agreed that their arbitration agreement will be governed by California law, a court must apply the CAA, Cal. Civ. Proc. Code § 1280 *et seq*. *See Volt Info. Scis.*, 489 U.S. at 470. Under the CAA, "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists," unless it determines that the right to compel arbitration has been waived by the petitioner or grounds exist for revocation of the agreement. Cal. Civ. Proc. Code § 1281.2. The party opposing the petition bears the burden of establishing waiver or revocation.

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1195 (2002). "If that party fails to do so, then the trial court must grant the petition and stay the proceedings pending arbitration." *Dunlop v. State Farm Mut. Auto. Ins. Co.*, No. C 12-2362 CW, 2012 WL 6096599, at *2 (N.D. Cal. Dec. 7, 2012); *see also* Cal. Civ. Proc. Code § 1281.4.

### IV.     DISCUSSION

#### A.     Arbitration

Defendants argue that an arbitrator should determine the arbitrability of the action because the parties' agreements expressly provide that the JAMS Comprehensive Arbitration Rules, which refer questions of arbitrability to an arbitrator, apply. (Mot. 5–6); *see* JAMS Rule 11(b) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.").[2] Plaintiffs disagree, arguing that the contracts do not clearly and unmistakably delegate arbitrability to the arbitrator. (Opp'n 9–11.)

The parties agree that both the FAA and CAA "allow[] parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2018). Any delegation must be supported by "clear and unmistakable" evidence that "the parties agreed to arbitrate arbitrability." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up).

The contracts between signatory Plaintiffs and signatory Defendants incorporate the JAMS Comprehensive Arbitration Rules. As Defendants note, (Mot. 6), the Ninth Circuit and "[v]irtually every circuit to have considered the issue has determined that incorporation of . . . arbitration rules constitute[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan v.*

---

[2] The parties have not presented a copy of the JAMS Comprehensive Arbitration Rules. The Court assumes the presently effective version of the rules available on the JAMS website applies. *Comprehensive Arbitration Rules & Procedures*, JAMS (effective June 1, 2021), https://www.jamsadr.com/rules-comprehensive-arbitration/ [https://perma.cc/N6VU-FD4X].

*Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (first alteration in original) (internal quotation marks omitted).

Plaintiffs argue that there is no clear and unmistakable delegation given the California Court of Appeal's decision in *Nelson v. Dual Diagnosis Treatment Center, Inc.*, 77 Cal. App. 5th 643 (2022), and the fact that the agreements here provide courts with broader review of an arbitrator's decisions than contemplated under California law. (Opp'n 9–11.) The Court disagrees. *Nelson* is distinguishable from this case for two reasons. For one, the *Nelson* court considered an arbitration agreement purporting to bind an unsophisticated party and distinguished *Brennan*, which involved sophisticated parties. *Id.* at 657. Clearly the parties here, two large health care groups, are sophisticated. Further, the *Nelson* court found that the broad severability clause at issue there created uncertainty as to the delegation. *Id.* at 656–57.[3] But the severability clauses in the agreements at issue here are substantially narrower as they do not include any language regarding limitation. (*Compare* Johnson Decl. Ex. A § 14.2; *id.* Ex. B § 14.2; *id.* Ex. C § 11.2 *with Nelson*, 77 Cal. App. 5th at 656 n.5.) Nor does the broadening of a court's power of *review* of an arbitrator's decisions create uncertainty.

As such, the determination of whether issues in this matter are subject to arbitration must be made by the arbitrator pursuant to the requirements of the CAA.

### B.     Non-Signatory Plaintiffs

That said, the only Plaintiffs who are bound to the agreements are the signatory Plaintiffs. "Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020). "The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . ." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (quoting *Buckner v. Tamarin*, 98 Cal. App. 4th 140, 142 (2002)).

---

[3] In *Nelson*, the severability clause stated: "If any provision of this Agreement will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid and unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed written, construed and enforced as so limited." *Nelson*, 77 Cal. App. 5th at 656 n.5 (emphasis removed).

Defendants advance two theories under which the non-signatory Plaintiffs can be compelled to arbitration: (1) equitable estoppel and (2) agency. (Mot. 8; Reply 5.) The Court considers each basis in turn.

### 1. Equitable Estoppel

"Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). "In the arbitration context, this principle has generated two lines of cases." *Id.* Under the first line, "nonsignatories have been held to arbitration clauses where the non-signatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d. Cir. 2001)). "A nonsignatory 'exploits the agreement' when the nonsignatory embraces a contract during its life by either seeking to enforce the contract through litigation or by receiving a direct benefit flowing from the contract itself." *Darley Int'l, LLC v. S.D. Int'l Bus. Inst.*, No. CV 08-05034 DDP (PLAx), 2008 WL 11334208, at *6 (C.D. Cal. Oct. 7, 2008). And "equitable estoppel is 'inapplicable where a plaintiff's allegations reveal no claim of any violation of any duty, obligation, term or condition' imposed by the contract." *Namisnak*, 971 F.3d at 1095 (quoting *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017)).

Non-signatory Plaintiffs' complaint does not seek to enforce the agreements at issue. (*See generally* Compl.) If anything, the complaint repudiates the agreements. (*See* Compl. ¶¶ 59–61.) Nor do Defendants advance an argument that non-signatory Plaintiffs received direct benefits flowing from the contracts themselves. As such, the Court will not hold the non-signatory Plaintiffs to the arbitration clauses through equitable estoppel.

### 2. Agency

"In a parent-subsidiary relationship, the agency doctrine may bind a parent to the contracts of its subsidiary where, in addition to owning the subsidiary, the parent company exercises sufficient control over the subsidiary's activities such that the subsidiary becomes a mere agent or instrumentality of the parent." *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 862 (2019) (cleaned

up). "The nature of the control exercised by the parent over the subsidiary must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." *Id.* (cleaned up).

Defendants point to a state court pleading by Emanate Health and various IRS filings as evidence of an agency relationship without explaining how such evidence satisfies the principal-agent test. (*See* Mot. 8; Reply 5; Maddigan Decl. Ex. D ¶ 21, ECF No. 30-6; Maddigan Reply Decl. Exs. A–D, ECF No. 37-2 to -5.)[4] It is not the role of the Court to make parties' arguments for them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to address an "argument . . . too undeveloped to be capable of assessment"). As such, the Court will not hold the non-signatory Plaintiffs to the arbitration clauses through agency principals.

## C. Stay

The Court stays the claims against by the non-signatory Plaintiffs. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also* Cal. Civ. Proc. Code § 1281.4 ("If a court of competent jurisdiction . . . has ordered arbitration of a controversy which is an issue involved in an action or proceeding pending before a court of this State, the court in which such action or proceeding is pending shall, upon motion of party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."). When considering whether to exercise discretion to grant a stay, a court must examine "the competing interests which will be affected by the granting or refusal to grant a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). The relevant interests are: (1) "the possible damage

---

[4] The Court grants Defendants' unopposed requests for judicial notice of the state court pleading and IRS filings. Fed. R. Evid. 201(b). But the Court can only take judicial notice of the existence of these documents—not the facts therein that may be subject to reasonable dispute. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (2001); *GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017), *aff'd*, 787 F. App'x 369 (9th Cir. 2019).

which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly cause of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (quoting *CMAX*, 300 F.2d at 268).

On its own motion, the Court stays this case until pending the resolution of the arbitration proceedings. The Court foresees little possible damage resulting from a stay given that the parties will still be able to proceed in arbitration. The Court further finds that a stay would advance the orderly cause of justice because staying this case while arbitration proceeds reduces the risk of conflicting decisions. Staying the claims by the non-signatory Plaintiffs would likely "secure the just, speedy, and inexpensive determination of [this] proceeding" by simplifying the factual and legal issues to be resolved in this action. Fed. R. Civ. P. 1. Plaintiffs and the non-signatory Defendants may agree to arbitrate the stayed claims without further order of the Court.

## V.   CONCLUSION

The motion to compel arbitration is granted in part and denied in part. The parties are ordered to submit the portions of this action by the signatory Plaintiffs to arbitration within 30 days pursuant to the terms of the arbitration agreement. *See* Cal. Civ. Proc. Code § 1281.2. The case is stayed pending resolution of the arbitration. The Court directs the Clerk to remove the case from the Court's active caseload until further application by the parties or order of this Court. The parties shall file a joint status report within 120 days, and a further report every 120 days thereafter. Each report must state on the cover page the date the next report is due. Additionally, the parties must notify the Court within seven days of the conclusion of arbitration proceedings.

**IT IS SO ORDERED.**